governmental policy in this regard rests with the Legislature.

In the cases cited by appellee it is freely admitted that the sovereignty cannot be sued without its consent. Heil v. United States (D. C.) 273 F. 729; Commonwealth Finance Corporation v. Landis (D. C.) 261 F. 440; Sloan Shipyards Corporation v. United States Fleet Corporation, 258 U. S. 549, 42 S. Ct. 386, 66 L. Ed. 762. In the first of these cases the court held that permission to sue the United States was expressly given by statute. The other two cases are easily distinguishable from the case before us. A reading of the majority opinion of the Supreme Court of the United States, and of the dissenting opinion of Chief Justice Taft in the case of Sloan Shipyards Corporation v. United States Fleet Corporation, makes it at once apparent that that case is no authority for holding that the state of Texas can be sued in the instant case without its consent. Under the acts of Congress the *corporation* (Emergency Fleet Corporation) sued in both of the cases last mentioned was organized for the purpose of carrying on certain businesses in which the government was interested. It was created a legal entity, had corporate existence with corporate property, and was subject to the control of its board of directors elected by stockholders as in other corporations. It was held that its nature and organization, and the enactment creating it were such that consent to be sued was fairly implied in its creation.

The board of prison commissioners is in no sense a corporation. It is purely an agency of government, a part of the government, performing no functions extragovernmental. It exists for the purposes of government only, and exercises none but governmental functions. Nothing differentiates it from any other purely governmental agency. If it can be sued without legislative consent, it being purely a governmental agency or department then the government, the sovereignty, can be so sued. There is no difference. To hold differently in this case would be to abrogate the principle.

We answer question No. 2 in the negative.

[2] We are unable to hold that the expressions used in the report of the penitentiary investigation committee and the adoption of that report by the Senate and House of Representatives conveys, even by implication, permission to be sued by appellee. We think in the language used and in the connection in which it was presented to the Legislature there is nothing whatever to suggest such a purpose on the part of the Legislature. It is evident from a study of the entire report of the investigation committee that the main purpose of that committee was to forestall the payment of those notes based upon the purchase of the oil mill property, because of certain alleged fraudulent acts and irregularities in the purchase of same, and to prevent, as far as lay within its power, the prison commission from paying for said property out of the revenues of the prison system. In any event, we think it would be presuming upon the intention of the Legislature to imply its consent for appellee to file suit against the state.

We answer question No. 3 in the negative.

[3] Article 6184 Vernon's Texas Civil and Criminal Statutes, 1922 Supplement, contains the following provision:

"The prison commission shall not purchase any land for the prison system of the state of Texas unless and until the land to be so purchased and the maximum price to be paid therefor shall have been submitted to and received the approval of the Legislature of this state."

As stated in the certificate of the honorable Court of Civil Appeals:

"The value of the land purchased with the mill plant was but a small part of the consideration agreed to be paid for the entire property, and its purchase was incidental to the main purpose of the commission, which was the establishment of a mill or factory to be operated for the benefit of the penitentiary system."

It is clear that the land, the two or three acres included with the purchase of this oil mill and factory, was only incidental to the purchase and establishment of an oil mill and factory, and that the restrictions relating to the purchase of and paying for land for the prison system, as contained in article 6184, have no application to the purchase of this property.

CURETON, C. J., did not sit in this case.

---

## JOHNSON et al. v. BINGHAM.*
### (Nos. 564-4018, 6459.)

(Commission of Appeals of Texas, Section A. March 18, 1925.)

Sequestration ⬅➡20—Joint possessors of land holding under replevy bond, rendering them jointly and severally liable, held alone liable to plaintiff.

Where two of joint possessors of land, withholding possession thereof, executed a replevy bond which provided that they should be jointly and severally liable for rents, and during entire period for which rentals were allowed land was in possession of such two joint possessors, *held* that, in view of Rev. St. 1911, art. 7106, it must be held that such two possessors were alone liable for rentals.

On second motion for rehearing. Judgment on first motion for rehearing (265 S. W. 884) modifying original judgment (265 S. W. 130) set aside, and judgment of Court of Civil Appeals (251 S. W. 529) affirmed in part and reversed and rendered in part.

Warren & Conn, of Houston, and Lewis H. Follett, of Angleton, for plaintiffs in error.

Cole & Cole, of Houston, A. R. Rucks, of Angleton, and Elliott Cage, of Houston, for defendant in error.

GERMAN, P. J. On November 19, 1924, on our recommendation, the judgment in this case was reversed and remanded, in order that it might be determined whether the defendants were jointly liable for rentals, or individually liable; it being intended that the judgment as to the amount recovered for rents should not be disturbed (265 S. W. 884). Defendant in error, Bingham, has filed motion for rehearing, calling our attention for the first time directly to the fact that judgment for rents was rendered against John B. Warren and Amanda Whitfield Laury upon a replevy bond, which provided that they should be jointly and severally liable for all rents.

We find that on March 31, 1919, John B. Warren and Amanda Whitfield, as principals, and the United States Fidelity & Guaranty Company, as surety, executed a replevy bond in favor of George H. Bingham in the sum of $10,000, which, among other things, after describing the land replevied, provided "that we and each of us will pay the value of the rents of the same in case we or either of us shall be condemned so to do."

The judgment recites that, after return of the verdict, plaintiff, Bingham, made motion to have judgment entered against all of the defendants and the United States Fidelity & Guaranty Company, surety on the replevy bond for the aggregate amount of rents found to be due. Thereupon the court entered judgment against all of the defendants and the surety in accordance with said motion.

Article 7106 of our statutes provides that where replevy bond has been given after sequestration, "in case the suit is decided against the defendant final judgment shall be entered against all the obligors in such bond, jointly and severally, for the value of the property replevied, and the value of the fruits, hire, revenue or rent thereof, as the case may be."

We now think that under the provisions of the replevy bond and the statute we have no discretion in the matter, and the judgment of the trial court as to rentals should be affirmed as to John B. Warren and Amanda Whitfield Laury. While Amanda was married at the time of the trial, we do not find in the record the date of her marriage. The bond was signed Amanda Whitfield. The trial court must necessarily have found that she married Laury after the execution of the bond.

The rentals allowed were from and after March 22, 1919, for the years 1919 and 1920.

During almost this entire period the land was in the possession of Warren and Amanda Whitfield under and by virtue of their replevy bond. We have therefore concluded that the other defendants are not liable for rentals. We therefore recommend that the judgment on motion for rehearing of November 19, 1924, be set aside, and that the judgment of the trial court and of the Court of Civil Appeals as to John B. Warren and Amanda Whitfield Laury be, in all things affirmed; that the judgment as to title to land be affirmed as to all other defendants, but as to rentals judgment be here entered that plaintiff take nothing of the defendants other than John B. Warren and Amanda Whitfield Laury.

CURETON, C. J. Judgments heretofore entered herein are set aside, and judgments of the district court and Court of Civil Appeals as against John B. Warren and Amanda Whitfield Laury are affirmed; and judgments as to title to land affirmed against all defendants; but the judgments as to rentals as against all defendants except Warren and Laury are reversed, and judgment rendered as recommended by the Commission of Appeals.